IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

DONNY G. TERRY

 Plaintiff,

v.              CASE NO. 05-J-2582-NW

J.J. MONTGOMERY,

 Defendant.

### MEMORANDUM OPINION

Pending before the court is Defendant's motion to dismiss, or in the alternative, for summary judgment (doc. 4).  Defendant has also filed a brief in support of said motion (doc. 5) and evidentiary material (doc. 6).  Plaintiff has filed a response and supporting evidence (doc. 10).  Defendant has filed a reply in support of the motion (doc. 11).  The court has carefully considered the motion, evidence, and arguments presented by the parties in support of their respective positions.

### I. FACTUAL BACKGROUND

Plaintiff, Donny G. Terry is a fifty-seven year old insulin-dependent diabetic.  (Pl. Br. at 1).  He has been an insulin dependent diabetic for over twenty years.  (*Id*.).  On January 2, 2004, Plaintiff traveled on Natchez Trace Parkway

1

around 11:30PM to return home. While driving, Plaintiff missed his exit and immediately slowed and stopped. (*Id.* at 2). Plaintiff then started forward and met Park Ranger J.J. Montgomery coming in the opposite direction. (*Id.*). Ranger Montgomery turned on his blue lights and Plaintiff stopped. (*Id.*).

Ranger Montgomery approached Plaintiff's car, took Plaintiff's license and went back to his patrol car. (*Id.*). Upon checking Plaintiff's license, Ranger Montgomery found that Plaintiff had a speeding ticket in Colbert County, Alabama which he had not paid and a warrant existed for Plaintiff's failure to appear in court. (*Id.*). As a result of not paying the ticket, Plaintiff's license had been suspended. (*Id.*). Ranger Montgomery also determined Plaintiff had no liability insurance. (*Id.*).

Ranger Montgomery then asked Plaintiff to get out of his car, handcuffed Plaintiff, and placed Plaintiff in the patrol car. (*Id.*). Plaintiff immediately complained that the handcuffs were too tight. (*Id.*) Plaintiff told Ranger Montgomery that he was a diabetic. (*Id.*) Plaintiff told Ranger Montgomery the handcuffs were too tight and he was in severe pain. (*Id.*). Plaintiff asked Ranger Montgomery to loosen the handcuffs and Ranger Montgomery refused. Plaintiff complained more about the handcuffs being too tight. (*Id.*) Plaintiff requested to go to the hospital and Ranger Montgomery refused to take him. (*Id.*). Plaintiff

then asked to be taken to the jail where someone would take the handcuffs off. (*Id*.). Ranger Montgomery left the handcuffs on Plaintiff for two hours at the scene while waiting for a wrecker to tow Plaintiff's vehicle. (*Id*. at 2-3). Ranger Montgomery then took Plaintiff to the Alabama State Trooper's office in Sheffield, Alabama and from there to the Lauderdale County Detention Center. (*Id*. at 3). The handcuffs were on Plaintiff for approximately two and one-half hours before they were removed at the detention center. (*Id*.). At the time the handcuffs were removed, Plaintiff was in so much pain he was crying. (*Id*.). An Alabama State Trooper then picked Plaintiff up and took him home rather than to the Colbert County Jail. (*Id*.).

The following day, Plaintiff went to the emergency room at Shoals Hospital for treatment for this wrists and hands. (*Id*.). X-rays showed no broken bones. The following day, Plaintiff went to Helen Keller Hospital's emergency room where the physicians placed his hands in splints and provided hydrocodone, a narcotic, for pain. (*Id*.). Plaintiff had to wear the splints for one month. (*Id*.). Later, he was examined for the injury to his wrists by specialists in Nashville and Birmingham. (*Id*.). Medical records from a neurologist show that the neurologist examined Plaintiff for " hand numbness, status post an incident during which he was handcuffed for a prolonged period of time - two and one-half hours." (*Id*.).

The neurologist found that Plaintiff has numbness in his right thumb. (*Id*.). The numbness was found in the distribution of the radial nerve. (*Id*.). The neurologist advised that given presence of the numbness for four months, Plaintiff would have some residual deficit in sensation in the distribution. (*Id*. at 3-4). Additionally, records from a Birmingham physician who has seen Plaintiff since 1986 show that Plaintiff experienced some neurological damage secondary to being handcuffed for two and on-half hours. (*Id*. at 4). Plaintiff had no prior weakness or numbness in his hands. (*Id*.)

## II.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial *Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(e); *Matsushita*, 475 U.S. at 587; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

### III. DISCUSSION

Plaintiff's excessive force claim is barred by qualified immunity. The

Supreme Court has set forth a two-step analysis for the application of qualified immunity. The court's initial inquiry is whether the plaintiff's allegations, if taken as true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, if under the plaintiff's version of the facts, a constitutional right would have been violated, the next step is to ask whether the right was clearly established. *Id.* Here, Plaintiff asserts Ranger Montgomery violated the Fourth Amendment by using excessive force while arresting Plaintiff.

Determinations of whether the amount of force employed by a law enforcement officer in the course of an arrest are analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Under *Graham*, the determination of whether the amount for force is reasonable turns on the facts and circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The Supreme Court cautions that the "reasonableness" of the use of force is evaluated from the perspective of a

reasonable officer on the scene, rather than through hindsight. *Id.* This "calculus of reasonableness" also must also give consideration to the fact that police officers often have to make split-second judgments in very intense situations. *Id.* at 396-97.

The Eleventh Circuit's three prong balancing test for determining whether the amount of force applied was reasonable includes the following: (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of injury inflicted. *Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir. 2004). The Supreme Court recognizes that "the right to make an arrest...necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Likewise, the Eleventh Circuit notes "the typical arrest involves some force and injury." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002).

In the instant case, Ranger Montgomery's actions do not amount to "excessive force." Plaintiff was arrested and handcuffed, nothing more. Plaintiff was not threatened, beaten, or physically abused. Plaintiff has not presented any evidence contrary to Ranger Montgomery's assertion that he gave Plaintiff some soda upon Plaintiff's disclosure of his diabetic condition and rechecked the handcuffs when Plaintiff complained about the tightness. Decl. of Montgomery at

¶¶ 4-5.  Plaintiff's only assertion of excessive force is the tightness and duration of the handcuffing.  Plaintiff asserts that as a result of being tightly handcuffed for over two hours, he has suffered numbness in his right thumb and some neurological damage secondary to the handcuffing.

Plaintiff was handcuffed for the period of time it took for the wrecker to arrive at Natchez Trace Parkway after he was arrested and for the period of time it took for Ranger Montgomery to transport Plaintiff to the Lauderdale County Detention Center.  Plaintiff has offered no proof that being handcuffed for this amount of time was excessive.

The amount of force exacted in effecting Plaintiff's arrest is similar to, if not less than, the amounts of force in similar Eleventh Circuit cases in which the Eleventh Circuit found the amount of force employed to be *de minimus*.  *See, e.g., Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000) (Defendant officer's action of grabbing the plaintiff from behind by the shoulder and wrist, throwing him against a van three or four feet away, kneeing him in the back, pushing his head into the side of the van, searching his groin area in an uncomfortable manner, and handcuffing him was *de minimus*).  The use of *de minimus* force, and nothing beyond, will not violate the Fourth Amendment's prohibition against the use of excessive force.  *Id.* at 1257.

Assuming Plaintiff's allegations to be true, no constitutional right has been violated as the force employed by Ranger Montgomery was *de minimus*. Therefore, following *Saucier*, the court's inquiry ends and Plaintiff's claims are barred by qualified immunity. *See Saucier*, 533 U.S. at 201.

## IV.   CONCLUSION

Having considered the foregoing, court finds that Plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial. It is therefore **ORDERED** that Defendant's motion for summary judgment is **GRANTED**. The plaintiff's claims shall be **DISMISSED WITH PREJUDICE** by separate Order.

**DONE** this 31st day of May 2006.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE